UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JALENA MILLER, as proposed administrator of the Estate of TARZS YOUNGBLOOD, Deceased,

Plaintiff,

-against-

CITY OF NEW YORK et al.,

Defendants.

23-cv-4443 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

In 2022, Tarzs Youngblood died unexpectedly while in custody at Rikers Island. A father of three, Youngblood was in pretrial detention because he couldn't pay the cash needed for bail. On February 27, he was found unresponsive in his cell. Fellow inmates carried him to the main floor at Rikers so he could receive medical care. But tragically, Youngblood died, allegedly due to the deliberate indifference of corrections officers and medical personnel on the scene.

The next year, Jalena Miller—Youngblood's partner and the mother of his children—filed this case on behalf of Youngblood's estate. She asserts claims under 42 U.S.C. § 1983 and New York law against the officers and medical personnel she claims are responsible for Youngblood's death, and a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against the City of New York. The medical defendants have moved to dismiss Miller's first amended complaint, Dkt. 103, and all defendants have opposed Miller's motion for leave to amend that complaint, Dkt. 122. For the following reasons, the motion to dismiss Miller's amended complaint is DENIED, and the motion for leave to amend that complaint is GRANTED.

Starting with the motion to dismiss, the medical defendants (two physicians, a physician assistant, and a registered nurse who attended to Youngblood) argue that (1) the complaint lacks details necessary to provide notice to the defendants under Fed. R. Civ. P. 8(a); (2) the § 1983 claim fails because the complaint fails to allege the medical defendants' personal involvement and deliberate indifference; and (3) the complaint fails to properly allege claims for negligence, medical malpractice, or wrongful death against them.

Here's what the complaint alleges. After what was later diagnosed as a fentanyl overdose, Youngblood was brought from his cell to the main floor of the jail by detainees who found him unresponsive. The medical defendants arrived on the scene "several minutes" later. Dkt. 23 ¶ 90. The complaint alleges that they "provided medical care that was delayed, negligent and improperly performed." *Id.* ¶ 91. This includes that they "deviated from the accepted standard of medical practice" by "failing to immediately and properly use an automated external defibrillator ('AED')

on Mr. Youngblood," "failing to immediately and properly intubate and ventilate Mr. Youngblood," "failing to immediately and properly insert an IV on Mr. Youngblood," and "otherwise failing to provide proper medical care to an unresponsive individual." *Id*. ¶ 92.

The medical defendants complain that this description isn't enough. And while they would be right if this case were at the summary judgment stage or at trial, this is a pre-discovery motion to dismiss. The complaint, while brief in its discussion concerning the medical defendants, certainly has enough to put them on notice. Defendants' argument that the complaint fails to comply with Fed. R. Civ. P. 8(a) is meritless.

Moving to § 1983, the complaint alleges that each of the medical defendants was personally involved in the conduct allegedly violating the statute—they were on the scene and the ones who administered medical care that the complaint says was deficient. *Id*. ¶ 90. Further, the complaint alleges that the defendants "deviated from the accepted standard of medical practice" and it gives examples, *id*. ¶ 92, alleges that defendants "act[ed] recklessly in failing to provide timely and proper medical care," *id*. ¶ 212, and that they acted with "deliberate indifference," *id*. ¶ 213. This level of detail suffices at the complaint stage to allege the elements of personal involvement and deliberate indifference. The same goes for the claims of negligence, medical malpractice, and wrongful death. The level of detail in this complaint might not suffice for every type of case; but here, the allegations of the complaint are straightforward—Youngblood was unresponsive and in cardiac arrest, the medical defendants were the ones who gave his medical care, they deviated from accepted standards of practice, with examples given, and Youngblood died as a result. In a case like this one, more isn't required to comply with Rule 8. The medical defendants' motion is denied.

Moving to the motion to amend the complaint, first a little background. This case has been pending since 2023. The reason for the delay has been Miller's difficulties in being appointed the administratrix of Youngblood's estate. While the original and amended complaints (both filed back in 2023) identified several of the defendants, the identities of some of the officers involved were unknown, and they were identified as John and Jane Does. In June 2026, after discovery finally kicked off, Miller moved to amend the complaint to identify those defendants, whose identities had been revealed in the defendants' discovery answers—Officer Michael Reid, Assistant Deputy Warden Daishawn Harris, Captain Kiesha Parris, Officer Ying, and Officer Leslie. But the statutes of limitations applicable to Miller's claims expired in either 2023 or 2025. So whether Miller's proposed amendment is futile or not (on limitations grounds) turns on the applicability of the relation-back doctrine.

Miller says that the doctrine applies, pointing to Fed. R. Civ. P. 15(c)(1)(A), which provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back." Here, it's undisputed that New York law provides the applicable statute of limitations for each of Miller's claims.

So Miller points to N.Y. C.P.L.R. § 1024, which is titled "Unknown parties," and says that:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

The Second Circuit in *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013), canvassed New York law and held that Section 1024 requires two things for the relation-back doctrine to apply: (1) "the party must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name," and (2) the complaint "must describe the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." (Emphasis added.) Defendants don't challenge the second prong. Their sole argument is that Miller failed to exercise "due diligence" prior to the running of the statute of limitations to identify the new defendants by name. The Court disagrees.

The Second Circuit has described Section 1024 as part of New York's "'more forgiving principle of relation back' in the John Doe context, compared to the federal relation back doctrine." *Id.* at 518. Courts require "concrete and timely steps to ascertain an officer defendant's identity, for example by submitting multiple discovery demands, requests under state or federal Freedom of Information laws, or requests to the Attorney General's office." *Barrett v. City of Newburgh*, 720 Fed App'x 29, 33 (2d Cir. 2017).

Here, Miller took "concrete and timely steps" to determine the identities of the Doe defendants, so she clears the due diligence bar. Shortly after Youngblood's death, she submitted two FOIL requests seeking records about his incarceration and death. Those requests turned up some names, but the records were heavily redacted and did not identify the remaining officers and supervisors who were involved in the events in question. (Defendants point out that some of the names that Miller now wants to add were discussed in the FOIL documents, but as Miller responds, what was missing is any information that these specific defendants were involved in the incident in question or supervised Youngblood at that time.) At that point, the most realistic way to get the information Miller needed was through discovery from the City.

So she pursued the Surrogate's Court proceedings necessary to obtain authority to prosecute the estate's claims and, once discovery became available, promptly served requests seeking the names. Those requests ultimately produced the information she needed, and she promptly moved to add the new defendants. True, Miller could have done more—she could have appealed the FOIL redactions or made additional informal requests to the City. But due diligence does not require maximum diligence, just taking reasonable steps under the circumstances. The avenues proposed by defendants offered uncertain prospects of success, and given that Miller hadn't yet been appointed as the administratrix of Youngblood's estate, she might have encountered resistance in obtaining the information she needed. So Miller focused first on getting the authority she needed to prosecute this

case, and then pursued the avenue most likely to produce the names. For these reasons, relation back is warranted under Section 1024 and Fed. R. Civ. P. 15(c)(1)(A), and Miller's motion to amend the complaint will be granted.

## CONCLUSION

For these reasons, the medical defendants' motion to dismiss the amended complaint is DENIED, and Miller's motion to amend the complaint is GRANTED.

The Clerk of Court is respectfully requested to close Dkts. 103 and 122.

SO ORDERED.

Dated: August 17, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge